## NOVEMBER TERM, 1865.

WILLIAM D. GIVEANS, appellant, and WILLIAM MCMURTRY, respondent.

The sheriff having advertised the complainant's property for sale, under executions, the complainant procured the defendant to advance their amount to the plaintiffs in execution, upon an agreement that the judgments should be assigned to him, and a mortgage for the amount, given to him by the complainant, and that he, the defendant, would then stay the executions—the mortgage upon foreclosure having been declared void for usury, the sheriff re-advertised. *Held*, that, as regards the assignments, the relation of borrower and lender did not exist, that the transaction amounted in legal effect to a purchase of the judgments, and that the binding effect of the judgments was not affected by the mortgage.

---

This was an appeal from a decision of the Chancellor, reported in 1 *C. E. Green*, 468.

*Mr. McCarter*, for appellant.

*Mr. Vanatta*, for respondent.

The opinion of the court was delivered by

VREDENBURGH, J. This was a bill filed by Giveans, to restrain McMurtry from selling the property of Giveans, under two writs of *fieri facias*, under judgments against the property of Giveans, and which judgments had been assigned to McMurtry. The Chancellor, upon the hearing of the cause, on pleadings and proofs, dissolved the injunction and dismissed the bill.

The case made by the bill was, that the sheriff having proceeded to advertise for sale the property covered by the levies, Giveans borrowed $3000 from McMurtry, which Giveans took, and with it paid off the said judgments, and gave a new bond and mortgage to McMurtry for the $3000.

The answer of McMurtry denies that the $3000 was paid by Giveans, in satisfaction and discharge of the said judgments, and avers that the said judgments were paid with the said $3000, advanced by McMurtry, and that the said judgments were assigned to him, under an agreement made by Giveans, that said judgments should remain subsisting liens in favor of McMurtry.

The question, therefore, made by the original bill and answer is, whether the $3000 was paid over by McMurtry to Giveans, and by him paid over to the plaintiffs in execution, in satisfaction thereof, or whether the $3000 was paid to the plaintiffs in execution by McMurtry, with the agreement that the judgments should be assigned to him, or held as an existing lien for his benefit.

Giveans, in his bill, expressly charges that he, on the twenty-fifth of February, 1856, paid the said judgments and executions in full satisfaction thereof. This is specifically denied in the answer. This denial must stand as true, until destroyed by proof by Giveans. The judgments are not cancelled, but on the contrary, are assigned.

I find no proof that the $3000 was intended or used to satisfy the judgments, except that of Giveans himself, in his direct examination. But even this is not so direct or strong as his allegations in his bill, which he also swore to. His testimony, therefore, scarcely adds any weight to his oath in

the bill. But his cross-examination explicitly contradicts his allegations in his bill. He says there, that he never received the $3000, or any part of it, or paid any of it to the plaintiffs in execution, nor did he know who did, or how much was paid, nor does he know to this day what became of the $3000. The evidence, therefore, of Giveans himself, shows conclusively that his bill is not true, and fails to show that the $3000 was appropriated to satisfy the judgments.

But there is other evidence that the $3000 was not intended for payment of the judgments. The fact that the judgments were assigned, and not satisfied of record, is strong presumptive proof that it was not the intention of the parties to pay them. But the proof is further, that Giveans himself agreed that the judgments were to be assigned, and not satisfied.

Thomas R. Linn says that before the $3000 was paid, he took a paper drawn by his father, Robert A. Linn, one of the plaintiffs in execution, prescribing the form of the assignment of his decree to whoever should advance the money.

Mr. Thompson says that Giveans was in his office when the $3000 was advanced by McMurtry, or his agent, and stated that these judgments were to be assigned, and the assignments were drawn by him in pursuance thereof; that the money was not paid him for the plaintiffs in execution, until he had drawn up and delivered a written agreement to procure assignments, and was then allowed to him by Mr. Ryerson, who held it as the agent of McMurtry. The said Robert A. Linn testifies, that after the lands were advertised by the sheriff, Giveans came to him and asked him if he would assign his decree, if he got a man who would find the money. He told him he would. That a few days before the day of sale, Giveans came to him and stated that he wanted him to go to Newton, receive the money, and make the assignment. He said he had got a man to furnish the money. That he sent his son down, and when he came back, he brought him the assignment to execute. He executed it, and sent it back. The evidence of Samuel Giveans is to the same effect.

The averment in the bill, that this $3000 was advanced as satisfaction is against the answer, the testimony of the complainant himself, and the whole evidence in the cause.

The next question arises upon the supplemental bill.

This alleges that, during the progress of the original suit, McMurtry had filed a bill to foreclose his $3000 mortgage, which he took at the time of the advancement of the money, and that the Chancellor in that decree dismissed the bill.

It is contended here now, that in that suit the Chancellor dismissed the bill for usury, that the assignments of the judgments were merely collateral to the mortgage, and that as the principal transaction was invalid for usury, all collaterals fall with it. But this assumes, in the first place, that the Chancellor annulled the mortgage for usury, which is not alleged in the supplemental bill, upon which no issue is raised by the pleadings. It assumes, in the next place, that the $3000 was a loan.

Was this transaction, in relation to this $3000, a loan by McMurtry to Giveans, or was it a purchase of these judgments by McMurtry from the plaintiffs in execution? It appears to me that the evidence shows that it was plainly a purchase, and not a loan. The bill and answer loosely call the $3000 a loan. But the question is not what the parties call it, but what was it in its nature. To determine this, we must look to the transaction at the moment when it really took place. What took place *before* is of very little consequence, in presence of the facts that took place at the very moment of the payment of the money.

McMurtry, by his agent, Mr. Ryerson, with money in hand, went with Giveans into the office of Mr. Thompson, the agent of the plaintiffs in execution. McMurtry had the right to prescribe, then and there, upon what terms he would part with his money. The evidence conclusively shows that it was a precedent condition to the actual delivery of the money, that the judgments should be assigned. Mr. Thompson says, that Mr. Ryerson would not pay the money without

his written stipulation that the judgments should be assigned, and that this was done in the presence of and with the assent of Giveans. The giving of the mortgage, the written agreement to assign, and the payment of the $3000 to the agent of the plaintiffs, were all cotemporaneous acts. In the absence of all evidence, what would be the inference of law? would it infer that the transaction was a loan, or a purchase? If the $3000 was a loan to Giveans, the money would have been handed over to Giveans, and he would have paid it to the plaintiffs. But the direct contrary was done. No part of the $3000 was in fact paid to Giveans, but, on the contrary, it was paid to the plaintiffs in execution. It was not the ordinary operation of borrower and lender. Where there is borrowing, the money passes from the lender to the borrower. Where there is a purchase, the money passes from the vendee to the vendor. Here the great fact done, to wit, the handing over of the money, was that of vendor and vendee, and not of lender and borrower.

There is also the evidence that, although the parties called this a loan, yet that the real object they were contemplating, was a sale and purchase.

Thus Robert A. Linn, says that Giveans came to him previous to the first day of sale, and asked him if he would assign if he got a man that would find the money. He told him he would. That a few days before the adjourned sale, Giveans came again to him, and stated he wanted him to go to Newton and receive the money and make the assignment. He said he had got the man to furnish the money. Linn told him he would send his son.

The whole transaction shows that this matter of the $3000 was a purchase of the judgments, and not a loan to Giveans. If it had been a loan, the money would have passed to Giveans, and been his property, and gone to his benefit, and been appropriated as he, Giveans, saw fit, either to pay off the judgments, or to any other purpose his fancy or his interest might dictate. But the reverse of all this actually took place. The money was studiously and strictly kept from his

possession. Not one cent of it passed into his hands. Not a cent of it was appropriated to Giveans' benefit. It did not pay off a farthing of the encumbrances against his property. It never become his money. It went for the sole benefit of McMurtry; he used it, and every cent of it, to purchase these judgments, as he would have bought so many horses, not from Giveans, but from strangers. Giveans himself, instead of demanding the money and putting it in his own pocket-book, as he had a right to do if it was a loan, stood by and acquiesced in the money being appropriated to procure the assignment of the judgments to McMurtry. Not a dollar of this $3000 was used as a consideration for the mortgage. It all went to purchase the judgments. The whole considera-tion of the mortgage was something different from the ad-vancement of the $3000. This transaction, therefore, of the $3000, although loosely called sometimes a loan, had not, in its nature, a single element of a loan, and even if everybody should unite in calling it so, it could not change its elemental nature. The whole of this $3000, then, instead of being a loan from McMurtry to Giveans, was appropriated towards purchasing the judgments and executions.

How then can the assignments be considered as collateral to the mortgage? What would have taken place if the as-signments had been collateral to the mortgage? The first thing would have been a loan of $3000 to Giveans, which did not take place; in the next place, a collateral must have been the property of Giveans, or under his control, but this so called collateral was not the property of Giveans, or under his control, but belonged to, and was under the control of the plaintiffs in execution, and sold by them to McMurtry. The relation of principal and collateral could not possibly exist between the mortgage and the judgments. The assignments could not possibly be collateral to the mortgage.

The contention of the complainant also assumes that the consideration of the mortgage was in fact a loan of $3000, whereas the proof is, that the true consideration was not the $3000, for not a dollar of it was paid or received on the

mortgage, but the true and only consideration of the mortgage to Giveans, was the postponement of the sale of his property under the levies, for three years.

The assignments of the judgments were valid. The transaction was a purchase and not a loan, and there is nothing whatever to weaken the binding force of the levies and executions under these judgments, and for these reasons, as well as those named in the opinion of the Chancellor, I think the decree below should be affirmed.

The decree of the Chancellor was affirmed by the following vote :

*For affirmance*—BEASLEY, C. J., BEDLE, CLEMENT, CORNELISON, ELMER, FORT, KENNEDY, VAN DYKE, VAIL, VREDENBURGH, WALES. 11.

*For reversal*—NONE.